IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-00913-RBJ

NICHOLAS ORTEGA,

      Plaintiff,

v.

JOHN KERRY, United States Secretary of State,
JEH JOHNSON, Secretary, United States Department of Homeland Security,
LORI SCIALABBA, Acting Director, United States Citizenship & Immigration, and
ANDREW LAMBRECHT, Field Officer Director, United States Citizenship & Immigration Services,

      Defendants.

---

**FINDINGS OF FACT, CONCLUSIONS OF LAW, ORDER OF JUDGMENT**

---

This case was tried to the Court on August 4, 2014. The Court received opening statements; testimony from Marcelo Ortega, Emma Barraza, and Nicholas Ortega; plaintiff's exhibits 1 through 6; and defendants' exhibits A through I.

**Findings of Fact**

The Court finds that the following facts were proven by a preponderance of the evidence:

1.     The plaintiff, Nicholas Eduardo Ortega, was born in Chihuahua, Mexico on November 22, 1966. Ex. 6 (his birth certificate).

2.     Nicholas's father, Marcelo Ortega, was born in Mercedes, Texas on February 9, 1945. Ex. 1 (his birth certificate).

3.     Nicholas's mother, Emma Barraza, was born in Mexico in approximately 1941.

4.  When Marcelo was born, his parents (who were from Chihuahua, Mexico) were living in Mercedes, Texas and working in the fields on the farm of Charlie Bates. Three of Marcelo's parents' seven children were born in the United States.

5.  Although Nicholas has spent substantial effort trying to compile documentation of Marcelo's childhood years, the documents that still exist and were found are limited. In addition to Marcelo's birth certificate the Court admitted a school record from the Edcouch-Elsa High School Counseling Department in Edcouch, Texas showing that Marcelo attended elementary school there in the second semester of the 1952-53 school year. Ex. 2. The Court also admitted a vaccination record apparently documenting that he was vaccinated on June 4, 1962, although the place of vaccination is unclear from the document. Ex. 3.

6.  The lack of documentation of Marcelo's physical presence in the United States in the years before Nicholas' birth is not particularly surprising. We are talking about the period 1945 to 1966. Marcelo's parents are deceased. According to Marcelo, field workers were paid in cash and apparently did not file tax returns. Marcelo did not apply for a Social Security number until 1973 at the age of 31. Documentation apparently was not a focus of the family.

7.  Marcelo testified with the assistance of a Spanish interpreter. The Court finds, based upon his demeanor and manner on the stand, the substance of his answers, and the consistency of his testimony with that of his wife and with such records as exist, that his testimony was entirely credible. I note that Marcelo testified that he believes Nicholas is a citizen of Mexico, which is contrary to the fact that Nicholas and his counsel are attempting to

establish in this case.[1] That opinion, plus Marcelo's admission that he could not remember certain things that, if remembered, might have benefitted his son's case, tended to support what I already had determined based on my observation of him as a witness – that he is an honest man who was truthful and straightforward in his testimony.

8. His testimony established beyond any question in my mind and certainly to a preponderance of the evidence that he has lived in the United States his entire life. As early as the age of seven or eight, while living in Mercedes, Texas, he was helping his father and siblings in the fields. Although his parents and some of his siblings would eventually return to and remain in Mexico, Marcelo remained in the United States. He worked mainly in the fields where cotton and various vegetables were being grown, and in irrigation of the fields, but he also worked for the Mercedes Oil Company. He had little formal education, none after the 1952-53 school year. Instead, he worked. He has lived and worked in at least three municipalities in Texas – Mercedes, Le Feria and San Benito – and also in Las Cruces, New Mexico and in Colorado.

9. From time to time Marcelo went to Mexico, either Chihuahua or Monterrey, for short visits. In his early years he might have been transported back and forth by one or both of his parents. For example, he thinks his first time out of the United States was when his parents took him to Mexico while he was still in school, but they brought him back within about two months. He thinks his second trip to Mexico occurred when he was about 17 or 18 years old. Later he would go on his own to visit his parents, who were living in Monterrey, and his sisters who were living in Chihuahua. His visits generally would last two or three weeks at a time,

---

[1] In any case, Marcelo's *belief* about his son's immigration status is, for legal purposes, irrelevant to the *reality* of his status under the relevant portions of the INA.

although there might have been some visits that were longer.  He had no job in Mexico and never worked in Mexico other than perhaps helping neighbors while visiting and at least one time when he shined shoes in the Monterrey city square during a visit to that city.

10.     In 1965, while on one of his visits to Chihuahua, he met Emma Barraza at a party. He was 20 years old, and she was four years older.  The evidence presented regarding their date of formal marriage was not clear, but according to the decision of the immigration officer who denied Nicholas' citizenship application, their marriage certificate was registered in Chihuahua, Mexico on June 14, 1972.  Ex. B.  In any event, according to Emma's trial testimony, the couple had their first child when Nicholas was born on November 22, 1966.

11.     Despite the fact that Emma was in Mexico and their children were born there, Marcelo did not move to or reside in Mexico.  He sent money to his family in cash, sometimes carried by a friend and co-worker.  Sometimes he sent clothes.  He obviously visited during the times that Emma became pregnant, and according to her, he would visit when the children were born.  Otherwise they communicated by letters and telephone.

12.     Emma initially testified that she thought he arrived for a visit two or three days after Nicholas was born and stayed for two weeks or less.  However, in a recent deposition she testified that she thought he stayed for perhaps one to one and one-half months.  Nevertheless, she still thinks that Marcelo came after Nicholas' birth and stayed only about three weeks before he had to go back to the United States to work.

13.     I find that Emma's testimony, like Marcelo's testimony, was credible.  It was clear that it was difficult for her to remember details from 47 years ago.  In fact, until she was shown Nicholas' birth certificate (apparently after the issue concerning Nicholas' citizenship was

raised), she thought his date of birth was October 13, 1967. Throughout his life Nicholas has believed, until he finally saw a birth certificate, that that he was born in 1967. But Emma's testimony was consistent with Marcelo's on the point that matters, i.e., that he was at all times since she met him living and working in the United States and would only come to Mexico for occasional short visits.

14. Emma finally moved to the United States in 1973 and has not been back to Mexico since that time.

15. One of the defendants' exhibits is a record showing that Marcelo applied for a Social Security number in Las Cruces, New Mexico in 1973. Ex. G. Another document admitted was a record of Marcelo's earnings for Social Security purposes between 1973 and 2010. The record is consistent, so far as it goes, with Marcelo's testimony that he has lived in the United States his whole life. He explained that he was always paid in cash. He didn't pay taxes until the 1970's, and no one asked him for a Social Security number. The Court finds that this is a credible explanation as to why he did not have a Social Security number before 1973.

16. Until 2010 Nicholas Ortega has always thought he was a United States citizen because he was the son of a United States citizen. The government points to a form entitled Notice of Approval of Relative Immigrant Visa Petition which was filed on April 8, 1976 and approved on September 11, 1976. Ex. E. Someone has written above a square in the form for "Name of Beneficiary" Emma Ortega's name. In the square is a list of names that appear to be Marcelo's and Emma's children, including Nicholas. There is a check in a checkbox on the form indicating that "Your petition to classify the beneficiary as an immediate relative of a United States Citizen has been forwarded to the United States Counsel at Juarez . . . ." There is another

check in a check box for "Since the beneficiary is a native of the Western Hemisphere, he is ineligible to become a lawful permanent resident other than by departing from the United States and reentering in possession of an immigrant visa issued by an American consul." *Id.* The government suggests that this form is an indication that Nicholas knew he was not a citizen of the United States. Plaintiff's counsel indicates that it means no such thing, and that it was a form prepared for Emma. The form itself is unclear as to its meaning, and no one was asked questions about it at trial. However, the form notwithstanding, the evidence presented at trial taken as a whole made one thing clear: Nicholas' father is a citizen of the United States and was physically present in the United States during his life to date, obviously including at least five years between when he turned 14 years old and when Nicholas was born.

17.     To the latter point, Nicholas testified credibly that although he was born in Mexico, he has lived in the United States "his whole life" that he can remember. He has been married by common law to a United States citizen for 21 years and has two children who are United States citizens. He was working for the United Parcel Service in 2010 when an "e-verify" check raised a question about his citizenship. He was astonished, as he had never thought his citizenship was in question. However, because of the question that was raised (which he apparently could not disprove to his employer's satisfaction) UPS let him go on June 9, 2010. With the loss his job he also lost his medical and dental benefits and his pension. Since then he says he has been in "survival mode" while he and his lawyer have been trying to prove his citizenship.

18.     Nicholas Ortega filed an Application of Certificate of Citizenship on February 19, 2013. Ex. A. He was interviewed by immigration officer Christine Aleman (since retired) on

May 28, 2013.  In addition to his statements, Mr. Ortega submitted a copy of his birth certificate (trial ex. 6); his father's birth certificate (trial ex. 1); his parents' marriage certificate; his personal affidavit; an affidavit from his father, Marcelo; an affidavit from his mother, Emma; various other affidavits from family members; his father's report card for the school year 1952-53 (trial ex. 2); a copy of his father's baptismal certificate of April 8, 1945; a copy of a certificate indicating that Marcelo was promoted to the first grade dated May 29, 1953; an immunization form dated June 4, 1962 (trial ex. 3); and various documents establishing his father's presence in the United States in 2008 and 2009.  Ex. B.

19. The immigration officer denied Nicholas' application for citizenship in a short written order issued on December 23, 2013.  Ex. B.  She stated as the basis of decision that

> [t]he documents you submitted are insufficient to establish that before your birth, your father, Marcelo Ortega Beltran, was physically present in the United States or its outlying possessions for a period or periods totaling not less than ten (10) years, at least five (5) of which were after attaining the age of fourteen.

*Id.*

20. Nicholas has claimed in this case that he brought his father Marcelo with him to the interview, and that he advised the immigration officer that he was available to be interviewed about his presence in the United States during the relevant years, but that the immigration officer declined to interview him.  However, he was not asked questions about that during the trial. Apparently in a pre-trial deposition the immigration officer testified that she was not aware of Marcelo's presence, and that had she known of it, she would have interviewed him.  Apparently she also testified that Nicholas' wife was present and crying during the interview, which Nicholas denies.  In any event, no evidence was presented at trial about who was present, who was available to be interviewed, what was said about that, etc.  Suffice it to say that there is no

evidence that any immigration officer or attorney ever interviewed Marcelo until his deposition was taken in this case on July 14, 2014.

### Conclusions of Law

This Court has jurisdiction to hear a timely action challenging the denial by any United States department or agency of a claim of a person within the United States to a right or privilege as a national of this country. 8 U.S.C. § 1503(a). Because this case was filed on March 28, 2014, well within five years after the final administrative denial of the plaintiff's claim, it is timely. The Court conducts a de novo review of the evidence of nationality, not a judicial review of an administrative action. *See, e.g.*, *Hizam v. Kerry*, 747 F.3d 102, 108 (2d Cir. 2014); *Richard v. Secretary of State*, 752 F.2d 1413, 1417 (9th Cir. 1985). Jurisdiction and venue are not disputed in this case.

Plaintiff's claim to citizenship is governed by the provisions of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq.*, that were in effect at the time of the plaintiff's birth. It is undisputed that under what was then section 301(a)(7) of the INA, 8 U.S.C. § 301(a)(7), a child born outside the United States of parents one of whom is a citizen of the United States who had been physically present in the United States for 10 years before the petitioner's birth, five of which were after the age of 14, is a national and citizen of the United States. The question raised by this case, therefore, is whether plaintiff's father, Marcelo Ortega, a United States citizen by birth, was "physically present" in the United States for 10 years before plaintiff's birth on November 22, 1966, at least five of which were after Marcelo reached the age of 14 on February 9, 1959.

The statute does not define the term "physically present in the United States." The government argues that it means physically present for a period or periods that total 120 months during the 21 years between Marcello's and Nicholas' births, including 60 months during the 93 ½ months between Marcello's attaining the age of 14 and Nicholas' birth. *See United States v. Velasquez-Vela*, 443 F.2d 231, 233 (9th Cir. 1971) (suggesting that "physical presence" means total time); *United States v. Gupta*, No. 12 Civ. 5637 (FM), 2014 WL 1116730, at *10 (S.D.N.Y March 20, 2014) (same).[2] But assuming without deciding that the government's interpretation is correct, the requirement is easily satisfied here. As indicated, the Court has found that Marcelo resided, and once he was old enough worked, in the United States from the date of his birth in 1945 to the date of Nicholas' birth (and continuously thereafter to the present time). He left the United States occasionally for short periods, generally just a few weeks at a time, to visit relatives in Mexico, including his wife and children before they moved to the United States. But under any definition, Marcelo was "physically present in the United States" for 10 years before Nicolas' birth, five of which were after the age of 14. Therefore, the plaintiff is entitled to a declaration that he is a national and citizen of the United States.

**Attorney's Fees and Costs**

Plaintiff has requested an award of attorney's fees and costs. The Equal Access to Justice Act establishes a procedure whereby, within 30 days of final judgment, the party seeking an award of fees and expenses must submit an application which shows that the party is the

---

[2] Two other authorities on which the government relies for this definition of "physically present in the United States" are less helpful. *See Lopez-Gomez v. Gonzales*, No. 08CV1276-W(BBB), 2014 WL 50217 (S.D. Cal. January 7, 2014) (suggesting that physical presence means presence for some period of time but not defining that period); *Matter of Tijerina-Villarreal*, 13 I&N Dec. 327, 331 (BIA 1969) (addressing whether the individual's father had *resided* in the United States for the requisite period of time).

9

prevailing party, is eligible to receive an award, and the amount sought, including an itemized statement from an attorney or expert witness stating the actual time expended and the rate at which fees and other expenses were computed.  28 U.S.C. § 2412(d)(1)(B).  The party must also allege that the petition of the United States was not substantially justified, which is determined on the basis of the record, including the record with respect to the action or failure to act by the agency.  If plaintiff seeks fees and costs with respect to the agency process, in addition to this litigation, then it appears that the applicable procedure and standards are found at 5 U.S.C. § 504.

At the conclusion of the trial I advised the parties and counsel from the bench that I was ruling in the plaintiff's favor on the merits of his claim to citizenship and would issue a written order explaining my findings and conclusions.  This is that order.  I also indicated that I was inclined to find that the government's position lacked substantial justification but was not prepared to make such a finding at that time.  That is what the statutory procedure is for.  Accordingly, I direct counsel to confer and to attempt in good faith to reach agreement as to the plaintiff's entitlement to fees and costs and the amounts thereof.  However, in the absence of a stipulation, plaintiff needs to follow the statutory procedures.  The Court will be interested, among other things, in whether plaintiff did in fact make Marcelo available for an interview by the immigration officer; even if not, why the immigration officer did not affirmatively seek out an interview with him; why the government persisted in denying Mr. Ortega's right to citizenship even after it deposed Marcelo; and finally, why the government continued to press its position opposing Mr. Ortega's claim after hearing Marcelo's (and Emma's) testimony at trial.

**Order**

The Court declares that Nicholas Eduardo Ortega is a national and citizen of the United States. The Court directs the appropriate government agencies and officials to issue his Certificate of Citizenship and a United States passport. Judgment shall enter accordingly.

DATED this 5th day of August, 2014.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge